UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KENNETH BOGGS,

        Plaintiff,

v.                                  Case No. 3:22-cv-914-MMH-PDB

DOUGLAS JOHNSON,
JOHN GODWIN,
JOHN OR JANE DOE, et al.,

        Defendants.

---

## ORDER

### I. Status

Plaintiff Kenneth Boggs, an inmate in the custody of the Florida Department of Corrections (FDOC), initiated this action on July 26, 2022,[1] by filing a pro se Civil Rights Complaint (Complaint; Doc. 1)[2] with exhibits (Doc. 1-1). In the Complaint, Boggs presents claims pursuant to 42 U.S.C. § 1983 against the following Defendants: Sergeant Douglas Johnson (Johnson); Warden John Godwin (Godwin); and four John or Jane Does. Complaint at 2-3. Boggs alleges Defendants failed to prevent three inmates from entering his

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).
[2] For all pleadings and documents filed in this case, the Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

cell and physically assaulting him. See id. at 6-10. As relief, Boggs seeks monetary damages, as well as declaratory and injunctive relief. Id. at 11, 14.

This matter is before the Court on Defendants Johnson and Godwin's Motion to Dismiss Complaint with Prejudice (Motion; Doc. 15). Defendants submitted exhibits in support of the Motion. See Docs. 15-1 through 15-2. Boggs filed a response, which he amended, in opposition to the Motion.[3] See Response to Defendants' Motion to Dismiss (Response; Doc. 22); Amended Response to Defendants' Motion to Dismiss (Amended Response; Doc. 20). Thus, the Motion is ripe for review.

## II. Boggs' Allegations[4]

Boggs asserts three claims for relief in his Complaint. See generally Complaint. Specifically, he alleges Defendants: (1) failed to prevent the assault in violation of his Eighth Amendment right to be free from cruel and

---

[3] On March 17, 2023, the Court ordered Boggs to show cause regarding his failure to file a response to the Motion. See Doc. 18. In response, Boggs provided documentation showing that he timely submitted his Response to prison officials for mailing on January 31, 2023. See Doc. 19 at 1; Doc. 20-1. Because the Court had not received the Response, Boggs proceeded to file the Amended Response. See Doc. 20. The Court did ultimately receive the Response, but not until September 7, 2023, as it appears to have been mailed to the wrong court. See Doc. 22. The Response and Amended Response raise the same arguments. See generally Docs. 20 and 22. Because the Court had not received the Response until after beginning work on resolving the Motion, the Court cites primarily to the Amended Response.

[4] In considering the Motion, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to Boggs, and accept all reasonable inferences that can be drawn from such allegations. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the Complaint, and may well differ from those that ultimately can be proved.

2

unusual punishment; (2) obstructed his right to file grievances in violation of the First Amendment; and (3) failed to comply with FDOC rules and regulations in violation of his Fourteenth Amendment right to due process. Id. at 11-13.

As to the specific underlying facts supporting his claims, Boggs alleges that on February 28, 2022, as inmates at Columbia Correctional Institution (Columbia CI) returned to their assigned dormitories after breakfast, three gang-affiliated inmates from F-dormitory entered the line of G-dormitory inmates. See id. at 6. The three inmates proceeded to the G-dormitory wing where Boggs was housed, gained access to his cell, and assaulted him. Id. at 6-7. Boggs alleges he sustained severe injuries, including several stab wounds to his upper body. Id. According to Boggs, the inmates locked his cell after the assault, and security staff did not check on him until two hours later, at which point Boggs was transported to a local hospital for treatment. Id. at 7.

Boggs contends Defendant Johnson, the security officer assigned to G-dormitory, acted with reckless disregard and callous indifference by failing to follow FDOC policies and procedures in his oversight of G-dormitory. Id. at 8. With regard to Defendant Godwin, he asserts that Godwin, warden of Columbia CI, failed to maintain order and proper training for his subordinate officers, and failed to safeguard inmate health and safety. Id. at 9. The four John or Jane Doe Defendants consist of: (1) the Officer-in-Charge who

allowed the three inmates to enter the line of G-dormitory inmates; (2) the "Security[9]-Nine Staff" who failed to monitor inmate movement and maintain an accurate count of inmates returning to their assigned dormitories; (3) the booth technician who granted access to the G-dormitory wing and Boggs' cell; and (4) the grievance coordinator at Columbia CI who failed to log Boggs' informal and formal grievances concerning the February 28, 2022 incident. Id. at 6-10. As a result of Defendants' alleged actions, Boggs states he has suffered permanent physical and mental injuries. Id. at 7.

### III. Summary of Arguments

In the Motion, Defendants Johnson and Godwin argue the Court should dismiss Boggs' claims with prejudice because (1) Boggs failed to exhaust his administrative remedies; (2) Boggs fails to state First Amendment, Eighth Amendment, or Fourteenth Amendment claims upon which relief can be granted; (3) Defendants are entitled to Eleventh Amendment immunity and qualified immunity; (4) Defendant Godwin, as a supervisory official, is not liable under 42 U.S.C. § 1983; and (5) Boggs is not entitled to the relief he requests. See Motion at 4-32. Boggs responds that the Court should not dismiss his claims because: (1) he exhausted his administrative remedies; (2) he states plausible claims for relief; and (3) Defendants are not entitled to qualified immunity. See Amended Response at 2-20.

4

## IV. Analysis

### A. Exhaustion of Administrative Remedies

#### 1. PLRA Exhaustion

The Eleventh Circuit Court of Appeals has held the exhaustion of administrative remedies by a prisoner is "a threshold matter" to be addressed before considering the merits of a case. <u>Chandler v. Crosby</u>, 379 F.3d 1278, 1286 (11th Cir. 2004); <u>see also</u> <u>Myles v. Miami-Dade Cnty. Corr. & Rehab. Dep't</u>, 476 F. App'x 364, 366 (11th Cir. 2012)[5] (noting that exhaustion is a "threshold matter" that must be addressed first) (citation omitted). It is well settled that the Prison Litigation Reform Act (PLRA) requires an inmate wishing to challenge prison conditions to first exhaust all available administrative remedies before asserting any claim under 42 U.S.C. § 1983. <u>See</u> 42 U.S.C. § 1997e(a); <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002). A prisoner such as Boggs, however, is not required to plead exhaustion. <u>See</u> <u>Jones v. Bock</u>, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" <u>Id.</u> Notably, exhaustion of available administrative remedies is

---

[5] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. <u>See</u> <u>McNamara v. GEICO</u>, 30 F.4th 1055, 1060-61 (11th Cir. 2022); <u>see generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

"a precondition to an adjudication on the merits" and is mandatory under the PLRA. <u>Bryant v. Rich</u>, 530 F.3d 1368, 1374 (11th Cir. 2008). Not only is there an exhaustion requirement, the PLRA "requires proper exhaustion." <u>Woodford v. Ngo</u>, 548 U.S. 81, 93 (2006).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so <u>properly</u> (so that the agency addresses the issues on the merits)." <u>Pozo</u>,[6] 286 F.3d, at 1024 (emphasis in original).

<u>Woodford</u>, 548 U.S. at 90. And, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." <u>Id.</u>

The United States Supreme Court has instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" <u>Ross v. Blake</u>, 578 U.S. 632, 648 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" <u>Turner v. Burnside</u>, 541 F.3d 1077,

---

[6] <u>Pozo v. McCaughtry</u>, 286 F.3d 1022 (7th Cir. 2002).

1084 (11th Cir. 2008) (quoting Goebert v. Lee Cnty., 510 F.3d 1312, 1322-23 (11th Cir. 2007)). In Ross, the Supreme Court identified three circumstances in which an administrative remedy would be considered "not available." Ross, 578 U.S. at 643-44. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 643. Next, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Finally, a remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 644.

Because failure to exhaust administrative remedies is an affirmative defense, Defendants Johnson and Godwin bear "the burden of proving that [Boggs] has failed to exhaust his available administrative remedies." Turner, 541 F.3d at 1082. In accordance with Eleventh Circuit precedent, a court must employ a two-step process when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. See Turner, 541 F.3d at 1081. In Turner v. Burnside we established a two-step process for

7

resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082-83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015).

At step two of the procedure established in Turner, the Court can consider facts outside the pleadings as long as those facts do not decide the case and the parties have had sufficient opportunity to develop the record. Bryant, 530 F.3d at 1376; see also Jenkins v. Sloan, 826 F. App'x 833, 838-39 (11th Cir. 2020). Here, Boggs submitted grievance records with the Complaint. See Doc. 1-1 at 2-8. Likewise, Defendants Johnson and Godwin submitted grievance records as exhibits to their Motion. See Docs. 15-1 through 15-2. The parties neither dispute the accuracy of these grievance records, nor request an evidentiary hearing. Bryant, 530 F.3d at 1377 n.16. Thus, the Court considers the grievance records solely for purposes of addressing the parties' competing contentions regarding exhaustion. In evaluating whether Boggs has satisfied the exhaustion requirement, the Court notes that the Eleventh

Circuit has determined that a "prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." Parzyck v. Prison Health Servs., Inc., 627 F.3d 1215, 1218 (11th Cir. 2010) (citations omitted).

## 2. Florida's Prison Grievance Procedure

State law "determines what steps are required to exhaust." Dimanche v. Brown, 783 F.3d 1204, 1207 (11th Cir. 2015); see also Jones, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDOC provides an internal grievance procedure for its inmates. See Fla. Admin. Code R. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process. First, an inmate must submit an informal grievance at the institutional level to a designated staff member responsible for the specific problem. See Fla. Admin. Code R. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. See Fla. Admin. Code R. 33-103.006. If the matter is not resolved through formal and informal grievances, the inmate must file an appeal to the Office of the FDOC Secretary. See Fla. Admin. Code R. 33-103.007. However, under certain specified circumstances, an inmate can bypass the informal grievance stage and start with a formal grievance at the institutional level. See Fla. Admin. Code R. 33-103.005(1);

9

33-103.006(3). Or an inmate can completely bypass the institutional level and proceed directly to the Office of the FDOC Secretary by filing a "direct grievance." <u>See</u> Fla. Admin. Code R. 33-103.007(3). Emergency grievances and grievances of reprisal are types of "direct grievances" that may be filed with the Office of the FDOC Secretary. <u>See</u> Fla. Admin. Code R. 33-103.007(3)(a).

Florida Administrative Code Rule 33-103.011 provides time frames for the submission of grievances. Informal grievances must be received within twenty days from the date on which the grieved incident or action occurred. <u>See</u> Fla. Admin. Code R. 33-103.011(1)(a). Formal grievances must be received no later than fifteen days from the date of the response to the informal grievance. <u>See</u> Fla. Admin. Code R. 33-103.011(1)(b). Similarly, grievance appeals to the Office of the FDOC Secretary must be received within fifteen days from the date that the response to the formal grievance is returned to the inmate. <u>See</u> Fla. Admin. Code R. 33-103.011(1)(c). According to Rule 33-103.014, an informal grievance, formal grievance, direct grievance, or grievance appeal "may be returned to the inmate without further processing if, following a review of the grievance, one or more . . . conditions are found to exist." Fla. Admin. Code R. 33-103.014(1). The rule provides an enumerated list as "the only reasons for returning a grievance without a response on the merits." <u>See</u> Fla. Admin. Code R. 33-103.014(1)(a)-(y). A

10

grievance can be returned without action if it: is untimely; "addresses more than one issue or complaint"; is "so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to"; is "not written legibly and cannot be clearly understood"; is a supplement to a previously-submitted grievance that has been accepted for review; does not "provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable"; or does not include the required attachments. See Fla. Admin. Code R. 33-103.014(1).

### 3. Summary of Parties' Positions on Exhaustion

Defendants Johnson and Godwin contend that Boggs' claims against them must be dismissed because Boggs failed to properly follow FDOC's three-step sequential grievance process before filing this lawsuit. See Motion at 4-10. In support of this contention, they have provided a record of all grievances Boggs submitted between January 1, 2022, and July 26, 2022. See Docs. 15-1 through 15-2. Viewing the exhibits in chronological order, the record consists of: (1) search results from FDOC's Inmate Grievance database for all grievances submitted by "Inmate Number" "292040" between January 1, 2022, and July 26, 2022; (2) a formal grievance Boggs submitted on April 12, 2022, with prison officials' response; and (3) a grievance appeal Boggs submitted on May 5, 2022, with prison officials' response. Id. According to Defendants Johnson and Godwin, this evidence shows Boggs did not submit

11

any informal grievances between February 28, 2022 (the date of the incident) and July 26, 2022 (when Boggs filed this lawsuit). <u>See</u> Doc. 15 at 10 (citing Doc. 15-1 at 1).

The grievance records provided by Defendants show that Boggs was transferred from Columbia CI to Cross City Correctional Institution (Cross City CI) after the incident. <u>See</u> Doc. 15-2 at 2-7. While housed at Cross City CI, Boggs submitted a formal grievance regarding the incident on April 12, 2022. <u>Id.</u> at 2-3. In his formal grievance, in addition to describing the February 28, 2022 incident, Boggs asserted that he previously submitted an informal grievance about the matter on March 14, 2022, but received no response. <u>Id.</u> at 2 ("Complainant filed at this stated level on date of: (03-14-2022), stemming from incident occurring date of: (02-28-2022), that will be documented below under the (Argument & Issues) section, which a timely response wasn't provided by expiration date of: (03-29-2022), which Complainant then proceeded "TO THE NEXT STEP," in accordance with not receiving (Informal) timely . . . See, (FAC)33-103.005(4)(a), which his (Formal) Grievance were filed, in accordance with . . . (FAC)33-103.006(2)(h)), on date of: (03-29-2022), which he still haven't received an response[.]"). On April 14, 2022, Cross City CI denied the formal grievance, stating in pertinent part:

Your Request for Administrative Remedy has been

> received, reviewed and evaluated.
>
> The subject of your grievance is currently being reviewed by the investigative section of the Office of the Inspector General. A copy of your complaint will be forwarded to that section to be included as a part of the current review. Upon completion of this review, information will be provided to appropriate administrators for final determination and handling.
>
> After review of the grievance log there is no informal or formal grievances submitted on 3/14/2022.
>
> As this process was initiated prior to the receipt of your grievance, your request for action by this office is DENIED.
>
> You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form, providing attachments as required by paragraphs 33-103.007(3)(a) and (b), F.A.C., and forwarding your complaint to the Bureau of Policy Management and Inmate Appeals, 501 South Calhoun Street, Tallahassee, Florida 32399-2500.

Id. at 4. Boggs appealed the denial of his formal grievance on May 5, 2022. Id. at 5-6. On May 17, 2022, the FDOC Secretary provided the following response:

> Your appeal has been reviewed and evaluated. The subject of your grievance was previously referred to the Office of the Inspector General. It is the responsibility of that office to determine the amount and type of inquiry that will be conducted. This inquiry/review may or may not include a personal interview with you. Upon completion of this review, information will be provided to appropriate administrators for final determination and handling.

> As this process was initiated prior to the receipt of
> your appeal, your request for action by this office is
> denied.

Id. at 7.

In response to the above evidence, Boggs avers that he submitted an informal grievance, dated March 14, 2022, and a formal grievance, dated March 29, 2022, at Columbia CI. See Amended Response at 4; see also Complaint at 10. Boggs states that he did not receive a response to either grievance because an "unidentified and unknown prison official (grievance coordinator) attempted to thwart [Boggs'] actions by not logging" or submitting the grievances. See Amended Response at 4, 9. According to Boggs, officials at Columbia CI hindered his efforts and rendered the grievance process unavailable to him. Id. at 9. Boggs asserts that he nevertheless completed the three-step grievance process because he filed a formal grievance and a grievance appeal after he was transferred to Cross City CI. Id. Finally, Boggs appears to argue that the Office of the Inspector General's (OIG) ongoing investigation demonstrates proper exhaustion. Id. at 8-9.

### 3. Turner Step One

Under the first step of the Turner analysis, the Court must review the allegations in the Motion and Amended Response and accept as true Boggs'

14

allegations. See Whatley, 802 F.3d at 1209. If Boggs' allegations show a failure to exhaust, then dismissal would be appropriate. Id. But, Boggs alleges that he timely submitted an informal grievance[7] at Columbia CI on March 14, 2022. See Amended Response at 4; see also Complaint at 10. And he further alleges that he filed a formal grievance and grievance appeal at Cross City CI. See Amended Response at 9; see also Docs. 15-1 through 15-2. Accepting Boggs' view of the facts as true, the Court cannot dismiss Boggs' claims at the first step of the Turner analysis.

### 4. Turner Step Two

As dismissal would not be appropriate based on Boggs' allegations in the Complaint and Amended Response, the Court next turns to the second prong of the Turner analysis. Here, the Court finds Boggs failed to properly exhaust his administrative remedies because he did not comply with the FDOC's sequential three-step grievance process. See Dimanche, 783 F.3d at 1211 (recognizing that the FDOC uses a three-step sequential process for inmate grievances that includes an informal grievance, formal grievance, and appeal); Bryant, 530 F.3d at 1378 ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152,

---

[7] The Court notes that Boggs does not argue that he could have bypassed the informal grievance step of the administrative process. See Fla. Admin. Code R. 33-103.005(1); 33-103.006(3).

1158 (11th Cir. 2005)). The record before the Court contains no evidence supporting Boggs' assertion that he filed an informal grievance regarding the February 28, 2022 incident. Instead, the search results from the FDOC's Inmate Grievance database show that Boggs did not submit any informal grievances in 2022 before he filed this lawsuit. See Doc. 15-1 at 1. Although Boggs counters that he timely submitted an informal grievance on March 14, 2022, he failed to submit a copy of the informal grievance with his Complaint or Amended Response. Nor has Boggs provided specific details regarding the informal grievance, such as its contents or the efforts Boggs undertook to submit the informal grievance to Columbia CI prison officials. In addition, Boggs has not identified any other evidence that would call into question the search results from the FDOC's Inmate Grievance database. As such, based on the undisputed record evidence, the Court finds that Boggs did not file an informal grievance. In failing to do so, Boggs did not complete the steps required to exhaust as determined by state law. See Pavao v. Sims, 679 F. App'x 819, 825 (11th Cir. 2017) (finding plaintiff's efforts to exhaust were insufficient because he failed to file an informal grievance and therefore, "did not comply with the sequential three-step grievance procedure").

To the extent that Boggs suggests any failure to exhaust should be excused because the grievance process was unavailable to him, that argument also fails. "While the burden is on the defendant to show an

available administrative remedy, once that burden has been met, the burden of going forward shifts to the plaintiff, who, pursuant to Turner, must demonstrate that the grievance procedure was 'subjectively' and 'objectively' unavailable to him." Geter v. Baldwin State Prison, 974 F.3d 1348, 1356 (11th Cir. 2020) (citing Turner, 541 F.3d at 1085); id. at 1356 n.14 ("But once the [prison official] has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." (quoting Rinaldi v. United States, 904 F.3d 257, 268 (3d Cir. 2018))). Here, Boggs asserts grievance officials at Columbia CI thwarted his grievance efforts by failing to log and respond to his March 14, 2022 informal grievance and March 29, 2022 formal grievance. See Amended Response at 4, 9, 14-15; see also Complaint at 10, 12.

Even if the Court assumes prison officials at Columbia CI thwarted Boggs' grievance efforts, Boggs does not allege there were any impediments to him pursuing the grievance process after his transfer to Cross City CI. See id. Indeed, Boggs was able to pursue a formal grievance and grievance appeal at Cross City CI without issue. Boggs offers no explanation as to why he did not file an informal grievance at Cross City CI, particularly since he believed his March 14, 2022 informal grievance had not been logged or otherwise processed by prison officials at Columbia CI. The circumstances here are similar to those in Bryant, where the Eleventh Circuit Court of Appeals

17

concluded that two Georgia prisoners failed to exhaust their administrative remedies even in the face of threats of reprisal from staff at a prior institution. 530 F.3d at 1373-79. One prisoner, Andrew Priester, alleged that he was beaten at Rogers State Prison [Rogers] but did not file any grievances, either at Rogers or a subsequent institution, because his requests for the pertinent forms were unanswered or denied and because "Rogers officials deterred him from filing grievances through the threat of violence." Id. at 1373. Assuming that grievance procedures were unavailable to Priester at Rogers, the Eleventh Circuit nevertheless concluded that they were available to him once he transferred to Georgia State Prison (GSP). Id. The court reached this conclusion despite the fact that a grievance filed at GSP would have been untimely. Id. The court explained:

> [A] grievance filed after Priester's transfer to GSP would have been untimely. But the relevant grievance procedures provide inmates with the opportunity to request consideration of untimely grievances for good cause. Thus, Priester could have exhausted his administrative remedies by filing a grievance at GSP and then by showing good cause for its tardiness.

Id. But because Priester did not attempt to file an out-of-time grievance at GSP and he failed to allege that GSP staff deterred him from doing so through threats of reprisal, the court concluded that Priester failed to exhaust available administrative remedies. Id. at 1373, 1377-78. The court

reached the same conclusion as to another prisoner, Gregory Bryant, stating,

> Like Priester, Bryant was later transferred to another prison where the threat of violence was removed. There, he could have filed an out-of-time grievance and then shown good cause for its untimeliness. Because he did not, Bryant failed to exhaust an administrative remedy that was available to him.

Id. at 1379; see also Poole v. Rich, 312 F. App'x 165, 167-68 (11th Cir. 2008) ("Even if we assume that Poole was threatened and that these threats rendered grievance procedures at Rogers unavailable to Poole, Poole's complaint is still due to be dismissed because he has failed to allege that grievance procedures were unavailable to him once he was no longer incarcerated at Rogers and was removed from the threats of violence made by the officials at that prison.").

Like Priester and Bryant, Boggs could have filed an informal grievance at Cross City CI after his transfer, but he did not do so. Although such a grievance likely would have been untimely, Boggs could have requested an extension of time. Florida's grievance protocol, like Georgia's grievance protocol discussed in Bryant, grants inmates additional time to file a grievance upon a showing of good cause. See Fla. Admin. Code R. 33-103.011(2). In addition, FDOC's grievance procedures allow an inmate to file a grievance at his or her current institution about an incident that occurred at a different institution, and "it shall remain the responsibility of the staff at

the inmate's present location to handle the informal or formal grievance." See

Fla. Admin. Code R. 33-103.015(4). Nevertheless, Boggs made no effort to file

an out-of-time informal grievance at Cross City CI. Notably, Boggs does not

allege that he was unaware of (or unable to learn about) his ability to request

an extension of time to file a grievance. See Fla. Admin. Code R. 33-

103.015(10) ("A copy of these rules shall be available for access by inmates at

a minimum in the inmate library and from the housing officer of any

confinement unit."). Because Boggs could have pursued an out-of-time

informal grievance once he arrived at Cross City CI, but failed to do so, the

Court finds that he failed to properly exhaust his available administrative

remedies. See Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir. 1999) ("Since

appellant has not sought leave to file an out-of-time grievance, he cannot be

considered to have exhausted his administrative remedies."); McNeely v.

Sec'y, Fla. Dep't of Corr., No. 3:16-cv-377-MMH-MCR, 2019 WL 448379, at

*10 (M.D. Fla. Feb. 5, 2019) (finding plaintiff did not exhaust FDOC's

grievance process where he had available administrative remedies, including

filing an out-of-time grievance following his transfer to a different institution,

that he did not pursue).

     Boggs' suggestion that the OIG's ongoing investigation obviated the

need for him to exhaust his administrative remedies is unavailing. First, the

Court notes that the OIG investigation has no bearing on the exhaustion

analysis because there is no indication that the investigation was the result of Boggs' having filed a grievance. To the contrary, as stated in Cross City CI's response to Boggs' formal grievance, the OIG investigation began before Boggs had filed his formal grievance. See Doc. 15-2 at 4. As such, the fact of the OIG investigation does not demonstrate Boggs exhausted his administrative remedies. See Fleming v. Espino, No. 3:20-cv-853-MMH-JRK, 2021 WL 5083743, at *7 (M.D. Fla. Nov. 2, 2021) (finding that plaintiff had failed to exhaust his remedies since "[t]here is no evidence supporting even an inference that the OIG's investigation was a result of Fleming filing a grievance"); see also Hersh v. Scott, No. 3:22-cv-408-BJD-LLL, 2023 WL 2242551, at *4 (M.D. Fla. Feb. 27, 2023) (finding OIG's investigation was "not relevant to the exhaustion analysis because there is no indication that investigation resulted from Plaintiff having filed a proper grievance"); Harris v. Lindblade, No. 3:22-cv-667-BJD-LLL, 2023 WL 5403273, at *5 (M.D. Fla. Aug. 22, 2023) (concluding OIG's investigation was "not relevant to the exhaustion analysis because there is no indication the investigation resulted from Plaintiff having filed a grievance"). Moreover, even if Boggs did prompt the OIG investigation, doing so would not excuse him from exhausting his administrative remedies as required by the Florida Administrative Code. Compare Pavao, 679 F. App'x at 825 (quoting Dimanche, 783 F.3d at 1210) ("Pavao's efforts to seek redress from the Florida state courts or the Inspector

21

General of the FDOC are not relevant to the question of exhaustion because they are not part of the prison grievance procedure, and therefore are outside the 'boundaries of proper exhaustion.'"); and Schlicher v. Fla. Dep't of Corr., 399 F. App'x 538, 539 (11th Cir. 2010) (rejecting the plaintiff's argument that writing letters to the Secretary of the FDOC, a federal judge, and the inspector general, and making verbal complaints to various prison officials, were sufficient to satisfy the exhaustion requirement); with Luckey v. May, No. 5:14-cv-315-MW-GRJ, 2016 WL 1128426, at *11 (N.D. Fla. Feb. 17, 2016) (concluding plaintiff properly exhausted where referral of plaintiff's grievances initiated Inspector General Office's investigation); and Lanier v. Smith, No. 3:08-cv-833-J-12JRK, 2009 WL 1758904, at *1 (M.D. Fla. June 19, 2009) (same). For these reasons, Boggs did not properly exhaust the administrative remedies available to him. As such, the Motion is due to be granted and Boggs' claims dismissed for failure to exhaust.

### B. Defendants' Remaining Arguments

Because Boggs' claims against Defendants Johnson and Godwin are due to be dismissed for failure to satisfy the PLRA's exhaustion requirement, the Court need not address Defendants' remaining arguments that: (1) Boggs fails to state claims upon which relief can be granted; (2) Defendants are entitled to Eleventh Amendment immunity and qualified immunity; (3) Defendant Godwin, as a supervisory official, is not liable under 42 U.S.C. §

1983; and (4) Boggs is not entitled to the relief he requests. See Motion at 10-32. Therefore, as to these issues, the Motion is due to be denied without prejudice.

Accordingly, it is now

**ORDERED AND ADJUDGED**:

1. Defendants Douglas Johnson and John Godwin's Motion to Dismiss Complaint (Doc. 15) is **GRANTED** to the extent Defendants seek dismissal for Boggs' failure to exhaust administrative remedies. In all other respects, the Motion is denied without prejudice.

2. Plaintiff Kenneth Boggs' Complaint (Doc. 1) is **DISMISSED without prejudice**.

3. The **Clerk** shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 18th day of September, 2023.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-10
c:   Kenneth Boggs, #292040
       Counsel of record